## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TRAVIS SCOTT ERB,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 1:09-2123** |
| v. | : | **(CONNER, D.J.)** |
| | | **(MANNION, M.J.)** |
| **WILLIAM SULLIVAN,** | : | |
| **LESLIE A. FILLAK, and** | | |
| **LEBANON COUNTY,** | : | |
| **Defendants** | : | |

### REPORT AND RECOMMENDATION

Pending before the court are: (1) a motion to dismiss the plaintiff's complaint filed on behalf of defendant Fillak, (Doc. No. 10); and (2) a motion to dismiss the plaintiff's complaint on behalf of defendants Sullivan and Lebanon County, (Doc. No. 16). Upon review, it is recommended that both motions be granted.

### I. PROCEDURAL HISTORY

By way of relevant background, on October 30, 2009, the plaintiff filed the instant complaint pursuant to 42 U.S.C. §1983 alleging violations of his First, Eighth and Fourteenth Amendment rights. (Doc. No. 1).

On December 22, 2009, a motion to dismiss the plaintiff's complaint was filed on behalf of defendant Fillak, (Doc. No. 10), along with a supporting brief, (Doc. No. 11). The plaintiff filed a brief in opposition to defendant Fillak's motion on January 10, 2010. (Doc. No. 17). A reply brief was filed by defendant Fillak on January 21, 2010. (Doc. No. 19).

In the meantime, on January 4, 2010, a motion to dismiss the plaintiff's complaint was filed on behalf of defendants Sullivan and Lebanon County. (Doc. No. 16). A brief in support of this motion was filed on January 19, 2010. (Doc. No. 18). The plaintiff filed a brief in opposition to this motion to dismiss on February 1, 2010. (Doc. No. 20). Defendants Sullivan and Lebanon County filed a reply brief on February 18, 2010.

By order dated June 21, 2010, the motions to dismiss were referred for disposition to the undersigned. (Doc. No. 29).

## II. MOTION TO DISMISS STANDARD

The defendants' motions to dismiss are brought pursuant to the provisions of Fed.R.Civ.P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)(abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for

2

enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. Id. Furthermore, in order satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Generally, the court should grant leave to amend a complaint before

3

dismissing it as merely deficient. See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004).

## III. DISCUSSION

The plaintiff's complaint alleges the following set of rather tragic circumstances: On March 14, 2009, the plaintiff was driving in the City of Lebanon when he was pulled over by a police officer for having "oversized tires." (Doc. No. 1, ¶10). The officer ran the plaintiff's license plate number and advised the plaintiff that he had outstanding warrants. (Id.).

The plaintiff was removed from his vehicle, after which he was again informed that there was an outstanding warrant for his arrest. (Id. at ¶11). The plaintiff was then searched and handcuffed. (Id.).

Apparently, the plaintiff was taken to the police station where he was placed in a holding cell until 3:30 p.m. that day. (Doc. No. 1, ¶12). He was then transported to the Lebanon County Prison where he was placed in another holding cell for approximately 1 ½ hours. (Id.). During this time, no intake was done. (Id.). Later, the plaintiff was strip searched and totally naked when he was observed by an officer. (Id.).

The plaintiff was then taken by a correctional officer to a housing unit and was told to go to "Bed #8." (Doc. No. 1, ¶ 13). He attempted to walk through the large rooms to bed #8, but an inmate was already in that bed. (Id.). He then proceeded to walk into another room where there was another bed #8, but someone was in it. (Id.). After he accessed yet another room which had a bed #8, he started laying his mattress out and proceeded to lie down in bed #7 which was open. (Id.).

At this time, the plaintiff was assaulted from behind by an inmate, and was repeatedly punched and kicked. (Doc. No. 1, ¶14). The plaintiff "took to the floor" to protect himself. While one inmate was hollering and screaming at the plaintiff, another inmate approached and began screaming at the inmate who was assaulting the plaintiff. (Id.). Both inmates ultimately ran away and left the plaintiff alone. (Id.).

According to the complaint, the plaintiff was extremely traumatized and afraid to contact staff at the prison for fear that he would be beaten again. (Doc. No. 1, ¶15). As a result, he "just laid back down in the bed, exhausted, and fell asleep." (Id.).

At approximately 11:00 p.m., a correctional officer conducted a head count and moved the plaintiff to a different bed. (Doc. No. 1, ¶16). The plaintiff was then given paperwork which consisted of "a purported traffic citation." (Id. at ¶17).

Later that night, the plaintiff was approached by another correctional

officer and told to grab his belongings, after which he was released. (Doc. No. 1, ¶18). The officer told the plaintiff that he did not know why the plaintiff was being released, but that "they had never released anyone simply via a telephone call before." (Id.).

Although he was incarcerated for unknown "outstanding warrants," the plaintiff alleges that he had paid the related fines and costs more than three years prior. (Doc. No. 1, ¶19). While the plaintiff was incarcerated, he alleges that his father contacted "Central Booking" and was informed that the plaintiff had been picked upon on a bench warrant for "outstanding fines and costs." (Doc. No. 1, ¶20). The plaintiff's father then contacted Charles Jones, the Chief Public Defender, who later advised that the plaintiff was incarcerated on outstanding warrants for supposedly unpaid fines and costs related to an incident which occurred when he was seventeen years old. (Doc. No. 1, ¶¶20-21). The plaintiff alleges that his father had paid these fines and costs, and that a judge had signed off on the fines and costs on August 20, 2007, two years prior. (Doc. No. 1, ¶22).

Prior to the plaintiff being arrested, he alleges that his father received a letter dated January 6, 2009, from the Lebanon County Probation Office that a contempt hearing had been scheduled for the plaintiff for February 24, 2009, regarding unpaid fines and costs. (Doc. No. 1, ¶23). The plaintiff alleges that he took the letter to the Probation Office and asked to talk to his former probation officer, but was told that she no longer worked there. (Id.).

He alleges that he then spoke to two probation officers, a male and female, who told him that they would take care of removing him from the "call of the list," and told him that he did not have to show up for court. (Id.).

On January 13, 2009, the plaintiff alleges that his father contacted the probation office with regard to the letter and was told that the order signing off on the costs and fines would have to be brought to the probation office. (Doc. No. 1, ¶24). The plaintiff alleges that when his father brought the order to the probation office, the clerk at the window "was amazed that the signed order was able to be produced and stated 'no one saves these receipts.'" (Id.). When the plaintiff's father asked what would happen if he did not have the order, the clerk said "You would have to pay it again," and directed the plaintiff's father to defendant Sullivan to make a copy of the order. (Id.). According to the plaintiff, defendant Sullivan then indicated that he had "personally taken care of it." (Id.). Even though there was no basis for contempt on the plaintiff's part, he alleges that defendant Sullivan unlawfully allowed a bench warrant to be issued for his arrest. (Id.).

On January 15, 2009, the plaintiff alleges that his mother went to the Court Administrator's office to make sure that he did not have to show up for the hearing. (Doc. No. 1, ¶25). The plaintiff alleges that his mother spoke with defendant Fillak, who was also surprised to see that the plaintiff had retained the order signing off on the costs and fines. (Id.). Defendant Fillak allegedly informed the plaintiff's mother that he did not have to show up for court and

that his name would be removed from the "call of the list." (Id.).

Upon showing proof that restitution was paid in full and that an order had been signed, the prison was contacted and the plaintiff was released. (Doc. No. 1, ¶26).

The plaintiff alleges that the defendants "conducted no independent investigation into the facts and circumstances of the case prior to issuing the bench warrant, but incarcerated plaintiff and placed him into custody causing him to be confined in prison on false warrants and, ultimately being assaulted by inmates while incarcerated, and to also be subjected to a humiliating strip search, a 4th Amendment violation." (Doc. No. 1, ¶27).

According to the complaint, the actions and conduct of defendant Sullivan "constituted a false arrest, an unlawful seizure, and an unlawful search of the person in violation of [his] 4th, 14th, and 8th Amendment rights. (Doc. No. 1, ¶28).

As a direct and proximate cause of the defendants' actions, the plaintiff alleges that he was "unjustly arrested, seized, searched, including being strip searched, was taken into custody, was placed in the Lebanon County jail, and was subjected to a beating by an inmate, causing extreme humiliation, aggravation, inconvenience, upset, emotional turmoil and expense." (Doc. No. 1, ¶29).

Based upon the above allegations, the plaintiff is seeking compensatory and punitive damages.

**A. Motion to Dismiss on Behalf of Defendant Fillak**

In her motion to dismiss, defendant Fillak initially argues that she is entitled to quasi-judicial immunity in her individual capacity[1]. (Doc. No. 11, pp. 7-8).

This court has previously found that quasi-judicial immunity applies to individuals who perform functions that are an integral part of the judicial process, including court administrators. Wicks v. Lycoming County, 2010 WL 456776, at *3 (M.D.Pa. 2010)(Conner, J.)(citing Stout v. Naus, No. 09-380, 2009 WL 1794989, at *3 (M.D. Pa. June 23, 2009)(citing Marcedes v. Barrett, 453 F.2d 391 (3d Cir.1971)). The doctrine has been applied to court personnel to prevent "the danger that disappointed litigants . . . will vent their wrath on clerks, court reporters, and other judicial adjuncts." Id. (citing Kincaid v. Vail, 969 F.2d 594, 601 (7th Cir. 1992); Ball v. Hartman, No. 09-0844, 2010 WL 146319, at *6 (M.D.Pa. Jan. 11, 2010)(Kane, J.)(quoting Kincaid for same proposition)). See also Wager v. York County Domestic Relations, 2010 WL 231129(M.D.Pa. 2010)(Conner, J.).

The only allegation against defendant Fillak in the plaintiff's complaint is that she reviewed a copy of the court order indicating that the plaintiff had

---

[1]Defendant Fillak argued for dismissal of any claims against her in her official capacity based upon 11th Amendment immunity and the fact that, in her official capacity, she is not a "person" who can be sued under §1983. (Doc. No. 11, pp. 3-6). However, in his brief in opposition to defendant Fillak's motion, the plaintiff indicates that he is not suing defendant Fillak in her official capacity. (Doc. No. 17, p. 7). Therefore, these arguments need not be addressed herein.

9

satisfied his restitution, indicated that he did not have to show up for court, and stated that his name would be removed from the call list. (Doc. No. 1, ¶25). Since defendant Fillak was acting as an extension of the court in exercising her responsibilities and there is absolutely no indication from the plaintiff's complaint that she was acting outside of her administrative functions, she is protected from suit by the doctrine of quasi-judicial immunity. As such, the court should grant defendant Fillak's motions to dismiss[2].

### B. Motion to Dismiss on Behalf of Defendants Sullivan and Lebanon County

In the motion to dismiss the plaintiff's complaint filed on behalf of defendants Sullivan and Lebanon County, it is initially argued that any claims against defendant Sullivan in his individual capacity should be dismissed because he is entitled to quasi-judicial immunity[3]. (Doc. No. 18, pp. 10-13).

A probation or parole officer is entitled to absolute quasi-judicial immunity for actions taken in his adjudicatory capacity. This immunity does not, however, extent to actions taken in the officer's executive or

---

[2] Because the court finds that defendant Fillak is entitled to quasi-judicial immunity, the remaining arguments raised by defendant Fillak in her motion to dismiss need not be addressed herein.

[3] Defendant Sullivan further argues that any claims against him in his official capacity should be dismissed based upon 11th Amendment immunity. (Doc. No. 18, pp. 6-9). However, in his brief in opposition to the defendants' motion, the plaintiff indicates that he is not suing defendant Sullivan in his official capacity. (Doc. No. 20, p. 7). Therefore, this issue need not be addressed herein.

administrative capacities. Wilson v. Rackmill, 878 F.2d 772, 775 (3d Cir. 1989); Harper v. Jeffries, 808 F.2d 281, 284 (3d Cir. 1986); Thompson v. Burke, 556 F.2d 231, 236 (3d Cir. 1977). It is not always clear when an action is taken in an adjudicatory as opposed to executive or administrative capacity. Simon v. Ward, 2001 WL 41127, at *2 (E.D.Pa. 2001). However, it has been found that actions, such as requesting bench warrants, are directly related to ensuring that the plaintiff was complying with the terms of his probation and, therefore, intimately associated with judicial proceedings. See Schuh v. Pollard, 2009 WL 3048721, at *17 (E.D.Mich.).

In his complaint, the plaintiff alleges that defendant Sullivan made a copy of the court order indicating that the plaintiff had paid his restitution and indicated that he would take care of the matter. The plaintiff further alleges that defendant Sullivan "unlawfully allowed the bench warrant to be issued." The plaintiff's complaint, therefore, indicates that defendant Sullivan's actions were taken in the performance of his adjudicatory functions. As such, defendant Sullivan is entitled to quasi-judicial immunity and his motion to dismiss should be granted[4].

The defendants further argue that the plaintiff's complaint should be dismissed as against Lebanon County for the plaintiff's failure to properly state a Monell claim. (Doc. No. 18, pp. 18-19).

---

[4]As the court recommends dismissal of the complaint on this basis, the other arguments raised in support of dismissal of the plaintiff's complaint with respect to defendant Sullivan will not be addressed herein.

11

A municipality may be subject to liability under §1983 if the plaintiff's injury was caused by a municipal "policy" or "custom." See McTernan v. City of York, 564 F.3d 636, 657 (3d Cir. 2009)(citing Monell v. Dep't of Social Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). A policy or custom can be established in two ways. Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990). First, a "policy" is made when a "'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." Id. (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986)). Second, a course of conduct is considered "custom" when "'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." Id. (quoting Monell, 436 U.S. at 690).

Here, the plaintiff fails to allege that his injuries were a result of a "policy" or "custom" of Lebanon County. The plaintiff must identify a policy or custom, and delineate "what exactly that custom or policy was." McTernan, 564 F.3d at 659. Instead, the plaintiff appears to rely upon his allegations that when asked what one would do if they did not keep receipts evidencing payment of restitution and costs and fines, a county employee indicated that they "would pay again." Such allegations are simply insufficient to establish a *prima facie* case of municipal liability. The plaintiff himself appears to recognize this when his only argument concerning Monell liability is the above mentioned "...misconduct *arguably* demonstrates a policy..." (emphasis

added), as required by Monell.

The plaintiff's complaint also fails to allege conduct by a municipal decisionmaker. Thus, the plaintiff's allegations are insufficient, and Lebanon County's motion to dismiss should be granted.

## IV. CONCLUSION

Based upon the foregoing, **IT IS RECOMMENDED THAT:**

**(1)** the motion to dismiss the plaintiff's complaint filed on behalf of defendant Fillak, **(Doc. No. 10)**, be **GRANTED**; and

**(2)** the motion to dismiss the plaintiff's complaint filed on behalf of defendants Sullivan and Lebanon County, **(Doc. No. 16)**, be **GRANTED**.

*s/ Malachy E. Mannion*

MALACHY E. MANNION
United States Magistrate Judge

Date: September 10, 2010

O:\shared\REPORTS\2009 Reports\09-2123-01.wpd